JUDGE BUCHWALD

10 CV 2963

801-08/PJG/EJC
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski
Edward Carlson



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHOENIX BULK CARRIERS, LTD.

          Plaintiff

  -  against  -

AMERICA METALS TRADING, LLP

          Defendant.

10 Civ. _____

VERIFIED COMPLAINT

      Plaintiff Phoenix Bulk Carriers, Ltd. ("Phoenix Bulk"), by its attorneys Freehill Hogan &

Mahar, LLP, as and for its Verified Complaint against Defendant America Metals Trading, LLP

("AMT"), alleges as follows:

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of maritime contracts

of charter party, and thus falls under this Court's admiralty and maritime jurisdiction pursuant to

28 U.S.C. §1333. The Court also has federal question jurisdiction pursuant to 28 U.S.C. §1331 in

that the action arises under the New York Convention on the Recognition and Enforcement of

Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9

U.S.C. §1 *et seq.*

## THE PARTIES

2.    At all times material hereto, Plaintiff Phoenix Bulk was and still is a business entity duly organized and existing under the laws of a foreign country with an address in Monrovia, Liberia.

3.    At all times material hereto, Defendant AMT was and still is a business entity organized and existing under the laws of a foreign country with an address in London, England.

## THE NATURE OF THE CLAIMS

4.    Between January and August 2008, Plaintiff Phoenix Bulk, as owner, entered into three maritime contracts of charter party with Defendant AMT, as charterer.

5.    Under the terms of the first charter party, dated January 21, 2008, Phoenix Bulk and AMT contracted for the carriage of pig iron aboard the M/V CAPT. EGGLEZOS from Ponta de Madiera, Brazil to the Mississippi River. (*See* Exhibit A: redacted copy of charter party).

6.    Pursuant to the second charter party, dated June 30, 2008, Phoenix Bulk and AMT contracted for the carriage of pig iron from Ponta de Madeira, Brazil to Sri Racha, Thailand aboard the M/V SANTOS SUCCESS. (*See* Exhibit B: redacted copy of charter party).

7.    Finally, under a third charter party dated August 18, 2008, Phoenix Bulk and AMT contracted for the carriage of pig iron from Ponta de Madeira, Brazil to the Mississippi River aboard the M/V PLEIADES. (*See* Exhibit C: redacted copy of charter party).

8.    The terms of each charter party obliged Defendant AMT to pay Phoenix Bulk for all demurrage incurred during the performance of each contract.

9.    In accordance with the charter parties, Plaintiff Phoenix Bulk duly performed the voyages, and during the performance of each voyage, Defendant AMT incurred demurrage.

Document Number: 348960

10.     More specifically, Defendant AMT incurred $539,680.15 in demurrage during the performance of the January 21, 2008 charter party; $104,003.50 in demurrage under the June 30, 2008 charter party; and, $13,216.80 under the August 18, 2008 charter party.

11.     Upon completion of the performance of each charter party, Plaintiff Phoenix Bulk submitted freight invoices to Defendant AMT showing the outstanding balances of demurrage due and owing to Plaintiff, attached hereto as Exhibits D, E and F.

12.     Phoenix Bulk has since demanded payment from AMT for the outstanding invoices. However, despite due demand, and in breach of the terms of all three charter parties, Defendant AMT has refused to pay any of the outstanding invoices.

## DEMAND FOR SECURITY

13.     The charter parties provide that any dispute arising thereunder be referred to arbitration in New York, and arbitration in this matter will soon commence.

14.     Plaintiff Phoenix Bulk now brings this action to obtain security in its favor in respect to its claims against Defendant AMT and in aid of the New York arbitration proceedings, and Plaintiff Phoenix Bulk specifically reserves its right to arbitrate the underlying claims in that forum.

15.     This action is further brought to obtain security for the additional sums that are recoverable as part of Plaintiff's claims, including Plaintiff's anticipated attorneys' fees, and arbitrators' fees and costs, and interest, all of which are routinely awarded in New York maritime arbitration matters.

16.     Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in New York arbitration will amount to $55,000 and interest on its damages is estimated to be $118,242 (calculated at the rate of 6% for a period of 3 years).

Document Number: 348960

17.     The total amount for which Plaintiff claims herein in regards to Defendant's failure to honor its charter party obligations is **$830,142.45**.

### RULE B ATTACHMENT AGAINST AMT

18.     After investigation, Defendant AMT cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims. Plaintiff has however learned that Defendant AMT has property located within this District, specifically (i) a U.S. dollar collection account with Deutsche Bank and (ii) $50 million in bonds within the possession of Dinosaur Securities, an investment brokerage firm located in New York City that serves as the "placement agent" for AMT's securities.

19.     According to a "Roadshow Presentation" and investment term sheets provided to potential investors,[1] Defendant AMT recently initiated a $50 million bond offer in New York to non U.S.-based investors to raise working capital for the pig iron operations of Cosipar, a mining and smelting operation located in Brazil.[2]

20.     Under this scheme, Cosipar will provide 100 percent of its pig iron to AMT, which commodity AMT will sell directly to consumers in the United States and abroad in U.S. dollar transactions.

21.     In exchange for this exclusive pig iron supply, AMT has provided $50 million in working capital to Cosipar, which AMT will in turn recoup through the issuance of a $50 million bond offer placed with Dinosaur Securities in New York.

---

[1] These documents can be provided to the Court for in camera inspection, but are not being attached to this complaint.

[2] Both Cosipar and AMT are owned by the Costa Montiero Group. This Group owns 77.3 percent of Cosipar and 100 percent of AMT.

22.     The pig iron consumers in turn will directly deposit their payments into AMT's U.S. dollar collection account at Deutsche Bank, which account serves as collateral for AMT's bonds that have been placed with Dinosaur Securities.

23.     Deutsche Bank is the principal paying, collateral and fiscal agent and trustee of the payments that will serve as collateral.

24.     As the entire financing transaction involving placement of the bonds centers on Dinosaur Securities located in New York City, and the deposits will serve as collateral for the bonds, Plaintiff submits that the U.S.-dollar collection account at Deutsche Bank is likely located here as well.

25.     Based on the foregoing, Plaintiff Phoenix Bulk submits that AMT currently maintains property in this district, both in the form of (i) the bonds within the possession of AMT's placement agent Dinosaur Securities and (ii) cash deposits with Deutsche Bank in the U.S.-dollar collection account.

WHEREFORE, Plaintiff Phoenix Bulk prays:

a.      That process in due form of law according to the practice of this Court may issue against Defendant AMT citing it to appear and answer the foregoing;

b.      That if Defendant AMT cannot be found within this District pursuant to Supplemental Rule B, property of Defendant AMT up to and including **$830,142.45** be restrained and attached, including, but not limited to, any cash, funds, escrow funds, credits, debts, or securities within the possession, custody or control of Deutsche Bank or Dinosaur Securities;

c.      That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

d.    For such other, further and different relief as this Court may deem just and proper

in the premises.

Dated: New York, New York
       April 6, 2010

                              FREEHILL HOGAN & MAHAR, LLP
                              Attorneys for Plaintiff
                              Phoenix Bulk Carriers, Ltd.

                        By: _____
                              Peter J. Gutowski
                              Edward J. Carlson
                              80 Pine Street
                              New York, NY  10005
                              (212) 425-1900

Document Number: 348960

## ATTORNEY VERIFICATION

State of New York    )
                  ) ss.:
County of New York )

PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Peter J. Gutowski

Sworn to before me this
6 day of April 2010

_____
Notary Public

CLARE HENRY
Notary Public, State of New York
No. 01HE4831498
Qualified in Kings County
Certificate Filed in New York County
Commission Expires January 4, 2014

Document Number: 348960

EX. A

03/16/2006 14:26 IFAX TTO-Canon.Fax@lr.org → Phyllis Marini ☑001/004

Form 142—Printed and Sold by Unz & Co., Inc., 24 Beaver St., New York 4, N. Y.—U 30516

RECOMMENDED

Adopted by the Documentary Committee of the Chamber of Shipping of the United Kingdom

CODE NAME: Gencon.

Issued to come into force for fixtures on and after 15th September 1922

## The Documentary Council of The Baltic and White Sea Conference

# UNIFORM GENERAL CHARTER

### AS REVISED 1922

(only to be used for trades for which no approval form is in force)

January 23, 2006 ..................................................................... 19......

Owners.    1. It is this Day mutually agreed between Phoenix Bulk Carriers    1

Ltd., Monrovia, Liberia    2

Owners of the steamer or motor vessel Phoenix Bulk Carriers Ltd., vessels to    3

be nominated (see clause 45)

of ................ tons Register and carrying about ................ tons of deadweight cargo,    4

Position.    now trading    5

and expected ready to load under this Charter about see Clause 26    6

Charterers.    and Messrs. National Material Trading LLC    7

of Elk Grove Village, Illinois as Charterers.    8

Where to load.    That the said vessel shall proceed to one (1) good safe always accessible    9

berth Ponta da Madeira, Brazil so near thereto as she may safely get and lie    10

Cargo.    always afloat, and there load a full and complete cargo (if shipment of deck cargo    11

agreed same to be at Charterers' risk) of see Clause 17    12

...........................................................................................    13

...........................................................................................    14

...........................................................................................    15

(Charterers to provide all mats and/or wood for dunnage and any separations required,    16

the Owners allowing the use of any dunnage wood on board if required) which the    17

Charterers bind themselves to ship, and being so loaded the vessel shall proceed to    18

Destination.    one (1) safe anchorage Mississippi River (between Mile 90 and 180).    19

Exact terminal to be mutually agreed for each voyage.    20

...........................................................................................    21

...........................................................................................    22

as ordered on signing Bills of Lading or so near thereto as she may safely get and    23

lie always afloat and there deliver the cargo on being paid freight—on delivered intaken quantity—as    24

Rate of freight.    follows see Clauses 16 and 34    25

...........................................................................................    26

...........................................................................................    27

...........................................................................................    28

03/16/2006 14:26 IFAX TTU-Canon.Fax@lr.org    → Phyllis Marini    ⌀002/004

**Owners' Responsibility Clause.**

2. Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever.

Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

**Deviation Clause.**

3. The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

**Payment of Freight.**

*See Clauses 16 and 35*

4. The freight to be paid ~~in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.~~

~~Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.~~

**Loading.**

*See Clause 45*

5. ~~Cargo to be brought alongside in such a manner as to enable vessel~~ to take the goods with her own tackle and to load the full cargo in.................... running working days. Charterers to procure and pay the necessary men on shore or onboard the lighters to do the work there, vessel only heaving the cargo onboard.

If the loading takes place by elevator cargo to be put free in vessel's holds, Owners only paying trimming expenses.

Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.

~~Time to commence at 1 p.m. if notice of readiness to load is given before noon and at 6 a.m. next working day if notice given during office hours after noon.~~

The notice to be given to the Shippers, ~~Messrs.~~ .Agents. and. Charterers. brokers. .=. .See. Clauses. 23 .and. 28.

Time lost in waiting for berth to count as loading time.

**Discharging.**

6. ~~Cargo to be received by Merchants at their risk and expense alongside~~ the vessel not beyond the reach of her tackle and to be discharged in................... .........running working days. Time to commence at 1 p.m. if notice of readiness to discharge is given before noon, and at 6 a.m. next working day if notice given during ~~office hours after noon.~~

Time lost in waiting for berth to count as discharging time.

**Demurrage.**

*See Clause 18*

7. ~~Ten running days on demurrage at the rate of.....~~ per day or pro rata for ~~any part of a day, payable day by day,~~ to be allowed Merchants ~~altogether at ports of loading and discharging.~~

**Lien Clause.**

*See Clause 27*

8. Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. ~~Charterers shall also remain responsible for freight and demurrage (including damages for detention)~~ incurred at port of discharge, ~~but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.~~

**Bills of Lading.**

9. The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, ~~but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.~~

**Strike-, War- and Ice-Clauses.**

10. *Strike-Clause, War Clause* and *Ice-Clause as below.*

03/16/2006 14:26 IFAX TTO~Canon.Fax@lr.org → Phyllis Marini ☑003/004

**Cancelling Clause.** 11. ~~Should the vessel not be ready to load (whether in berth or not)~~ 88
on or before the................................Charterers have the option of cancelling this contract, 89
such option to be declared, if demanded, at least 48 hours before vessel's expected 90
arrival at port of loading. Should the vessel be delayed on account of average 91
or otherwise, Charterers to be informed as soon as possible, and if the vessel is 92
~~delayed for more than 10 days after the day she is stated to be expected ready to~~ 93
~~load, Charterers have the option of cancelling this contract, unless a cancelling date~~ 94
~~has been agreed upon.~~ 95

**General Average.** 12. General average to be settled according to York—Antwerp rules, 1950, Pro- 96
[In New York]  [1974 as amended 1990] prietors of cargo to pay the cargo's share in the general expenses even if same have 97
been necessitated through neglect or default of the Owners' servants (see clause 2). 98

**Indemnity.** 13. Indemnity for non-performance of this Charter-party, proved damages, not 99
exceeding estimated amount of Freight. 100

See Clause 28   **Agency.** 14. ~~In every case the Owner shall appoint his own Broker or Agent both~~ 101
~~at the port of loading and the port of discharge.~~ 102

**Brokerage.** 15. 1.25 % brokerage on the freight earned is due to............Tornav.................. 103
Shipping Limited by Owners.................................................................................. 104
deadfreight and demurrage

~~In case of non-execution at least 1/3 of the brokerage on the estimated amount~~ 105
of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for 106
the latter's expenses and work. In case of more voyages the amount of indemnity to 107
~~be mutually agreed.~~ 108

## GENERAL STRIKE CLAUSE.
109

Neither Charterers nor Owners shall be responsible for the consequences of any strikes or 110
lock-outs preventing or delaying the fulfilment of any obligations under this contract. 111
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when 112
vessel is ready to proceed from her last port or at any time during the voyage to the port or ports 113
of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they 114
agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such 115
declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of 116
cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, 117
(freight payable on loaded quantity only) having liberty to complete with other cargo on the way 118
for their own account. 119
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's 120
arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall 121
have the option of keeping vessel waiting until such strike or lock-out is at an end against paying 122
half demurrage after expiration of the time provided for discharging, or of ordering the vessel to 123
a safe port where she can safely discharge without risk of being detained by strike or lock-out. 124
Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers 125
of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions 126
of this charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight 127
as if she had discharged at the original port of destination, except that if the distance of the sub- 128
stituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to 129
be increased in proportion. 130

## GENERAL WAR CLAUSE.
131

If the nation under whose flag the vessel sails should be engaged in war and the safe 132
navigation of the vessel should thereby be endangered either party to have the option of cancelling 133
this contract, and if so cancelled, cargo already shipped shall be discharged either at the port of 134
loading or, if the vessel has commenced the voyage, at the nearest safe place at the risk and expense 135
of the Charterers or Cargo-Owners. 136
If owing to outbreak of hostilities the goods loaded or to be loaded under this contract or 137
part of them become contraband of war whether absolute or conditional or liable to confiscation or 138
detention according to international law or the proclamation of any of the belligerent powers each 139
party to have the option of cancelling this contract as far as such goods are concerned, and contra- 140
band goods already loaded to be then discharged either at the port of loading, or if the voyage 141

has already commenced, at the nearest safe place at the expense of the Cargo-Owners. Owners to
have the right to fill up with other goods instead of the contraband.    142 143

    Should any port where the vessel has to load under this Charter be blockaded the con-
tract to be null and void with regard to the goods to be shipped at such port.    144 145

    No Bills of Lading to be signed for any blockaded port, and if the port of destination
be declared blockaded after Bills of Lading have been signed, Owners shall discharge the cargo
either at the port of loading, against payment of the expenses of discharge, if the ship has not sailed
thence, or, if sailed at any safe port on the way as ordered by Shippers or if no order is given at
the nearest safe place against payment of full freight.    146 147 148 149 150

GENERAL ICE CLAUSE.    151

PORT OF LOADING.    152

a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to
proceed from her last port or at any time during the voyage or on vessel's arrival or in case
frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave
without cargo, and this Charter shall be null and void.    153 154 155 156

b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to
leave, he has liberty to do so with what cargo he has on board and to proceed to any other
port or ports with option of completing cargo for Owner's benefit for any port or ports in-
cluding port of discharge. Any part cargo thus loaded under this Charter to be forwarded to
destination at vessel's expense but against payment of freight, provided that no extra expenses
be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if
lumpsum), all other conditions as per Charter.    157 158 159 160 161 162 163

c) In case of more than one loading port, and if one or more of the ports are closed by ice,
the Captain or Owners to be at liberty either to load the part cargo at the open port and
fill up elsewhere for their own account as under section B or to declare the charter null and
void unless Charterers agree to load full cargo at the open port.    164 165 166 167

d) This Ice Clause not to apply in the Spring.    168

PORT OF DISCHARGE.    169

a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall
have the option of keeping vessel waiting until the re-opening of navigation and paying
demurrage, or of ordering the vessel to a safe and immediately accessible port where she can
safely discharge without risk of detention by ice. Such orders to be given within 48 hours
after Captain or Owners have given notice to Charterers of the impossibility of reaching
port of destination.    170 171 172 173 174 175

b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave,
he has liberty to do so with what cargo he has on board and to proceed to the nearest ac-
cessible port where she can safely discharge.    176 177 178

c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and
vessel shall receive the same freight as if she had discharged at the original port of destination,
except that if the distance of the substituted port exceeds 100 nautical miles, the freight
on the cargo delivered at the substituted port to be increased in proportion.    179 180 181 182

Clauses 16 through 47 inclusive as attached, are deemed to be considered
as fully incorporated in this Charter Party.

Charterers                                Owners

Form 142—Printed and Sold by Unz & Co., Inc., 24 Beaver St., New York 4, N. Y.—U 30518

TORNAV SHIPPING LIMITED

RIDER CLAUSES TO PHOENIX BULK CARRIERS LTD./NATIONAL MATERIAL TRADING
CHARTER PARTY DATED JANUARY 23, 2006.

Clause 16    **FREIGHT**

per metric tonne free in and out for the first 4 cargoes.

Premium of US $1.00 to be added to freight for the first 1,101,600 MT of cargo loaded.

The freight rate to be renegotiated based on market conditions for cargoes 5-8, 9-12, 13-14.

Clause 17    **CARGO**

14 cargoes of 70,000 MT five percent (5%) more or less in Owners option pig iron in bulk.

Clause 18    **DEMURRAGE / DESPATCH RATES**

For first 4 cargoes, demurrage , if incurred, shall be paid at the rate of US $17,500 per
running day of twenty-four (24) consecutive hours or pro-rata for part of a day for all
time used in excess of allowed laytime both ends.  If sooner despatched, owners to pay
despatch at half demurrage rate.

Clause 19    **DAMAGES BY STEVEDORES**

Master to notify stevedores of damages in writing within 24 hours of its occurrence.  Any
damages by stevedores at loading and/or discharging port or consequences thereof to be
settled directly between owners and stevedores.  However if a dispute with respect to
damages should arise, then Charterers will intervene and cooperate in settling claim and
will remain ultimately responsible for outstanding amount provide all other means of
collection/settlement have failed and all claims are fully documented by written
reports/surveys made at the time of the alleged damage.

Clause 20    **PORT CONGESTION**

Not applicable

Clause 21    **OVERTIME**

Overtime, if any, to be for account of the party ordering same, but ship's crew and
officer's overtime to be for Owners account.   Overtime, if any, ordered by the port
authorities to be for Charterer's account.

TORNAV SHIPPING LIMITED

RIDER CLAUSES TO PHOENIX BULK CARRIERS LTD./NATIONAL MATERIAL TRADING
CHARTER PARTY DATED JANUARY 23, 2006.

Clause 22      SIGNING BILL/S OF LADING

Master to sign clean on board Bill/s of Lading in accordance with draft survey figures.
Owners to remain responsible for possible shortage in accordance with international
shipping practice. The draft survey figures to be used for settlement of freight,
deadfreight, demurrage and despatch at port of loading and port of discharging. If
master disagrees with shore figures, a joint draft survey will be made to ascertain the
draft and the resulting quantity of cargo.

Owners agree to sign and issue Bills of Lading any time Charterers desire for any
quantity loaded up to that period, always in accordance with mates receipts and freight to
be paid as per charter party. Bills of Lading to be marked "subject to all
terms/conditions/exceptions of the charter party dated January 23, 2006 including
arbitration clause".

It is understood that master is only obliged to sign clean on board Bills of Lading for
cargo actually being "clean" and Master has the option to reject unclean cargo for which
he cannot issue/sign clean Bills of Lading and order new cargo. Failing to deliver new
clean cargo owners will claim deadfreight.

Clause 23      NOTICES

Master/Owners to give 10/8 days notice of ETA Ponta da Madeira of performing vessel
or substitute with estimated cargo lift hereafter 5/4/3/2/1 days notice with definite
performing vessel to agents at loadport and Charterers brokers Tornav Shipping Ltd;
email: tornav@gncom.com.   Master to cable Owners agents at discharge port and
Charterers brokers Tornav Shipping Ltd. 7/4/2/1 days ETA notices discharge ports.
Should the Master/Owners fail to give these notices, then Charterers have the option to
increase the laytime by 24 hrs, provided they can prove that the vessel's loading
/discharging was delayed due to the Master/Owners not having given said notice.

Clause 24      TAX CLAUSE

Any taxes and/or dues and/or wharfages on cargo to be for Charterers account. Any
taxes and/or dues and/or wharfages on vessel to be for Owners account. P.U.T./M.M.R.
tax to be for Charterers account.

Clause 25      OPENING AND CLOSING OF HATCHES

Vessel to perform opening and closing of hatches during loading and discharging
operations, provided permitted by shore regulations, in order to prevent damage to the
cargo.

TORNAV SHIPPING LIMITED

RIDER CLAUSES TO PHOENIX BULK CARRIERS LTD./NATIONAL MATERIAL TRADING
CHARTER PARTY DATED JANUARY 23, 2006.

Clause 26    **LAYDAYS/CANCELLING-SCHEDULING**

Shipments:    Commencing January 20-30, 2006 and then about every sixty (60) days.

Laydays of a ten (10) day spread to be presented to Owners a minimum of sixty (60) days
prior to each load and then fine tuned a minimum of fifteen (15) days prior to the first
layday.

Owners and Charterers to work closely together on exchange of information, weekly and
then daily prior to each load.

Should the vessel not be ready to load (whether in berth or not) on or before agreed upon
laydays cancelling, Charterers have the option of cancelling the voyage in question, such
option to be declared, if demanded, at least 48 hours before vessel's expected arrival at
port of loading.

Clause 27    **SETTLEMENT OF DEMURRAGE/DESPATCH**

Charterers are responsible for payment of demurrage at loading and discharging ports for
all lost time from detention due to lack of cargo or documentation or barges.

Demurrage at loading and discharging port/s is to be settled directly between Owners
and Charterers.  Owners are to submit laytime statements and statement of facts in letter
form to Charterers, who are to settle demurrage and Owners to settle despatch incurred
at loadport, as soon as at all possible but not later than twenty five (25) days after
completion of discharge.

Clause 28    **APPOINTMENT OF STEVEDORES-AGENTS/HOLDS CLEANING**

Stevedores at loading port to be appointed by Charterers.

Brazshipping shall be vessel's agent at loading port or to be mutually agreed.

Agents at discharge port to be appointed by Owners.

Agency fee not exceeding the current rate to be for Owners' account.

The vessel's holds, beam and hatch coamings to be clean, dry and absolutely free from
residue of any previous cargoes before commencement of loading, to an independent
surveyors' satisfaction.  If any cleaning has to be made, same to be for Owners' account
and to be effected at their time.

TORNAV SHIPPING LIMITED

RIDER CLAUSES TO PHOENIX BULK CARRIERS LTD./NATIONAL MATERIAL TRADING
CHARTER PARTY DATED JANUARY 23, 2006.

Clause 29    **POLLUTION CLAUSE**

Owners are required to establish and maintain financial or other responsibility in respect of oil or other pollution damage as required by any government, including Federal, State, or Municipal or other division or authority thereof, to enable the vessel without penalty or charge, lawfully to enter, remain at, or leave any port, place, territorial or contiguous waters of any country, state or municipality in performance of this charter party without delay.

The Owners shall make and maintain all arrangements by bond or otherwise as may be necessary to satisfy the Charterers against all consequences whatsoever for any failure or liability to do so.

Clause 30    Delete

Clause 31    **ARBITRATION CLAUSE**

Should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three (3) persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen: their decision or that of any two of them, shall be final and, for the purpose of enforcing any award, this agreement may be made a rule of the court. The arbitrators shall be commercial men.

Clause 32    Delete.

Clause 33    **NON-REVERSIBLE LAYTIME**

Delete

Clause 34    **FREIGHT PAYMENT**

One hundred percent (100%) freight payable on signing/releasing Bills of Lading marked "Freight payable as per Charter Party". Full freight is deemed earned pro rata as cargo being loaded on board and is discountless, non-returnable, vessel and/or cargo lost or not lost. For owners full banking style see Clause 35.

Clause 35    **BANKERS**

To be advised

TORNAV SHIPPING LIMITED

RIDER CLAUSES TO PHOENIX BULK CARRIERS LTD./NATIONAL MATERIAL TRADING CHARTER PARTY DATED JANUARY 23, 2006.

Clause 36     **TOP OFF CARGO**

Delete

Clause 37     **FORCE MAJEURE CLAUSE**

Neither the Owners nor the Charterers as the case may be shall be liable for any delay or failure of performance under this contract caused by or resulting from any contingency or cause beyond its control or beyond the control of its supplier or the Carrier of the material, included by not limited to calamities of nature, strikes, wars, riots, mobilizations, embargoes, labour difficulties, delays of carriers, shortage or requisitions of supplies or transportation and other similar or dissimilar occurrences, whether legal or illegal.

The party so affected may postpone its performance and such party shall give notice in writing to the other party, as soon as reasonably practical, of such fact, and if required shall produce satisfactory proof thereof, provided, however, that nothing herein provided shall extinguish, delay or suspend the obligation of either party to liquidate all its outstanding liabilities under this contract accrued or due before the period of suspension or which is not prevented from loading by circumstances giving rise to the suspension.

Clause 38     **PROTECTIVE CLAUSES**

Chamber of Shipping War Risk Clauses 1 and 2, P & I Bunker Clause, New Jason Clause, Both-To-Blame Collision Clause, US and Canadian Clause Paramount, attached hereto, to be incorporated in this Charter Party.

Clause 39     Delete

Clause 40     **TRANSHIPMENT**

Transhipment of cargo will not be allowed, except in case of proven force majeure.

Clauses 41     Delete
- 44

Clause 45     **CHARTERERS'S LOADING TERMS AND CONDITIONS/VESSEL SPECIFICATIONS**

Stevedores and labour to load and trim cargo under Master's control and direction are to be considered Owner's servants. Any responsibility whatsoever, resulting from negligence, error in judgement and bad trimming ordered or accepted by Master, to be Owner's liability.

TORNAV SHIPPING LIMITED

RIDER CLAUSES TO PHOENIX BULK CARRIERS LTD./NATIONAL MATERIAL TRADING
CHARTER PARTY DATED JANUARY 23, 2006.

| Clause 45 Cont | Charterer guarantees a loading rate of 10,000 MT per weather working day Sundays and holidays included. |

Charterer guarantees a loading rate of 10,000 MT per weather working day Sundays and holidays included.

Only one laytime calculation to be issued.

Owners will arrange owned or operated geared or gearless Bulk Carrier vessels, classed highest Lloyd's or equivalent and will nominate same to Charterers in advance of arrival with full vessel particulars.

Performing vessels to be maximum 18 years. Any additional premium due to vessel's age/flag to be for Owners account. Older vessels subject to Charterers and Brazil Port Authority approval.

Charterers are to confirm acceptance of the vessel within 24 hours of nomination, according to CVRD acceptance through Owners agent, failing which vessel will be deemed to have been accepted.

Master of the carrying vessel will be required to give Charterers at loading port the following information:

1. Notice of ETA 10/8 days with vessel or substitute and then 5/4/3/2/1 days with definite performing vessel.

2. At least two (2) days prior to the vessels arrival the following:
   a) ETA
   b) DWT in tropical water/GRT/NRT
   c) LOA
   d) Width
   e) Arrival draft (fwd-aft) max 2 meters trim
   f) Cargo plan and loading sequence considering the Charterers instructions
   g) Air draft _____
   h) Deballasting time, if any.
   i) Gas free condition
   j) Number, diameter, material made of, location on hoist bollards for following mooring lines.
      - fore/aft head lines
      - fore/aft spring lines
      - fore/breast lines
   k) Availability of stand-by mooring lines
   l) Informing if vessel already has DPC clearance for the new Brazilian regulations 007/95.

TORNAV SHIPPING LIMITED

RIDER CLAUSES TO PHOENIX BULK CARRIERS LTD./NATIONAL MATERIAL TRADING
CHARTER PARTY DATED JANUARY 23, 2006.

Clause 45
Cont

- Charterers/Shipper have no responsibility for any problem that could arise from the
  vessel age/ type, due to the cargo/terminal nature or with Brazilian Rules referring
  vessel is older than 18 years. In such case vessel only will be considered finally
  accepted after receiving the official clearance from DPC.

- Any delay during loading from vessel side which may result in the decision of terminal
  to unberth the vessel, will be for Owner's full responsibility/time/expense.

- 05 wooden pallets to be used in each hold to be loaded for the first dropping of cargo for
  Charterers account. Any need for more pallets for Owner's account/time.

- Vessel to have all draft marks/sounding pipes, correction and trimming tables in good
  condition.

- In case a nominated vessel fails to tender NOR within the agreed laydays Charterers
  will not be under the obligation to load the cargo on board the carrying vessel, provided
  the Port Authorities reallocated new laydays to that vessel. In case Charterers agree to
  load after the contracted laydays time to start counting on berthing time.

- Shifting time at loadport not to count.

Clause 46    **DISCHARGING TERMS**

Cargo to be discharged by Owner's stevedores, free of expense to Charterers, at
discharging port with customary quick despatch (CQD).

Clause 47    **OPTIONS**

Charterer to have the option of shipping to Quebec City, the rate to be mutually agreed
but very similar to Mississippi River rate.

**From:** tornav [mailto:tornav@bellnet.ca]
**Sent:** Mon 1/21/2008 5:40 PM
**To:** Ed Coll
**Cc:** Bob McCullough
**Subject:** AMT/ Phoenix CP dated Jan 12, 2008


Ed
Pls find below recap to AMT/ Phoenix fixture, pls review and revert with comments


Charterer- America Metals Trading LLP,
            London, UK

Shipowner- Phoenix Bulk Carriers Limited
            Monrovia, Liberia

Vessels- Suitable SDBC, Classed Lloyds 100A1 or equivalent
         max 18 years

Cargo- 3 x 70,000 MT 5% MOLOO Pig Iron
       Shipowner to declare quantity on nominating performing vessel or latest
       10 days prior to commencement of Laydays

Loading - 1 SB Ponta de Madiera, Brazil

Discharging - 1 SB OR SA CHOPT Mississippi Rvr not above Baton Rouge

Laydays-  1st load- March 1-30, 2008 to be narrowed by Charterer to a 10 day spread latest Feb 1
          2nd load- April 1/30, 2008 to be narrowed by Charterer to a 10 day spread latest March 1
          3rd  load- May/June, 2008 to be narrowed by Charterer to a 10 days spread latest April 1

Loading/ Discharging- 15,000 MT per WWD SHINC

Notice of Readiness- To be tendered ATDNSHINC, WIBON

Freight-


file://C:\Documents and Settings\gadecki\Local Settings\Temporary Internet Files\OLK7E\08_0121Fixed...    3/10/2010

Freight Payment- To be paid upon signing/ releasing OBL's

Demurrage/ Despatch- to be mutually determined on day of fixing performing vessel but shall be relative to $60,000 per day based on the BPI index at 8,000 Points/ HD

Demurrage/ Despatch to be settled within 30 days of completion of the voyage

National Material Trading LLC agrees to assign their agreement for the "14th cargo" (freight at 45.50) with Phoenix Bulk Carriers Limited to  America Metals Trading LLP. This NMT/ Phoenix "14th cargo" becomes the AMT/ Phoenix "1st load" described above. NMT will guarantee performance of this "1st load"

Otherwise as per NMT/ Phoenix CP dated Jan 23, 2006 with logical alterations

End

EX. B

08_0711-1247RevisedFixtureMemo.txt

From: Ed Coll
Sent: Friday, July 11, 2008 12:47 PM
To: 'tornav'
Cc: Chartering
Subject: 08-0711-1247 nmt / SANTOS SUCCESS


 bob/ed

- pls cfm u see this-

will cll u to discuss but leave u run with it



we have taken the following vsl on subs till 1600 hrs today and therefore propose
the following in replacement of our previous agreements on the thailand execution



 acct amt

64750/65400 mt min/max pig iron
in bulk

1 sb pdm
1 sb sri racha
l/c july 18-24 , eta july 19 in ballast
load/disch terms as prev agreed
dem/des at load 85000/day
at disch 50000/day

frt usc              100 pct
ppd

otherwise as per prev fixture

this agreement to supercede pre-existing agreements on this execution

pls cfm asap



MV SANTOS SUCCESS
SINGLE DECK BULK CARRIER, GEARLESS.
CYPRUS FLAG / 1984
66894 DWT / 12.771M SSW
GRAIN 77,775CBM
LOA/BM: 225M/32.30M
7H/7H - TPC : 66.40
GRT/NRT : 36526 / 21783
SPEED/CONS: ABT 13K/30MT IFO 180 LADEN , ABT 13K/29MT IFO 180 BALLAST + MDO AT SEA
0.8MT IN PORT: HFO 2.1MT + MDO 1.8MT / BALLAST-DEBALLAST 3MT MDO+2.1MT HFO TLS ABT
(DESC AS PER HEAD CP)

end

# EX. C

**From:** Bob McCullough [tornav@bellnet.ca]
**Sent:** Tuesday, August 19, 2008 12:01 PM
**To:** Ed Coll; lmonteiro@nmlp.com; giovanni; dancira@amt-usa.us
**Cc:** tornav; Barbara Gradley
**Subject:** AMT/ Phoenix CP dated Aug 18,2008

Ed
Pls find below recap to AMT/ Phoenix fixture, pls review and revert with comments


Charterer- America Metals Trading LLP,
          London, UK

Shipowner- Phoenix Bulk Carriers Limited
           Monrovia, Liberia

Vessels- Suitable SDBC, Classed Lloyds 100A1 or equivalent
         max 18 years

Cargo- 70,000 MT 5% MOLOO Pig Iron
        Shipowner to declare quantity on nominating performing vessel or
        min 10 days prior to commencement of Laydays

Loading - 1 SB Ponta de Madiera, Brazil

Discharging - 1 SB OR SA CHOPT Mississippi Rvr not above Baton Rouge

Laydays-  Sept 25- Oct 10, 2008
Loading/ Discharging- 15,000 MT per WWD SHINC BENDS

Notice of Readiness- To be tendered ATDNSHINC, WIBON

Freight- $              ST

Demurrage/ Despatch- to be mutually determined on day of fixing performing vessel but shall be relative to $60,000 per day
based on the BPI index at 8,000 Points/ HD

Demurrage/ Despatch to be settled within 30 days of completion of the voyage



Otherwise as per AMT/ Phoenix CP dated Jan 12, 2008 with logical alterations

End

EX. D



AMERICA METALS TRADING LLP
c/o TORNAV SHIPPING
Suite 300,125 Lakeshore Rd. East
Oakville, L6J 1H3
Canada

**Phoenix Bulk Carriers ( US) LLC**

88 Valley Road
Middletown, RI 02842
Tel: (401) 846-7790 Fax: (401) 846-1520

Date        10 October 2008

## Freight Recap

**m.v. CAPTAIN P. EGGLEZOS - C/P 21 January 2008**

Freight:
    73,302.0000 mt pig iron at  _____

Deadfreight:
    248.0000 mt pig iron at  _____

Demurrage at PONTA DA MADEIRA                                        195,757.80

Demurrage at NEW ORLEANS                                             343,922.35
Charterers payment 09/22/08
Charterers payment 09/25/08

**Balance in Owners favour**                                        **539,680.15**

E.& O.E.

We ask you kindly to transfer above balance with value September 12, 2008 to:

BANK OF BERMUDA LTD
PAR LA VILLE PLACE
14 PAR LA VILLE ROAD
HM-08 Hamilton HM 08, Bermuda
Bermuda
SWIFT CODE: BBDABMHM
Credit Account: No. 010-097574-501
Beneficiary: Allseas Logistics Ltd
Reference: CAPTAIN P. EGGLEZOS - Com Bul - F000161 - Client 237

EX. E



AMERICA METALS TRADING LLP
c/o TORNAV SHIPPING
Suite 300,125 Lakeshore Rd. East
Oakville, L6J 1H3
Canada

**Phoenix Bulk Carriers ( US) LLC**

88 Valley Road
Middletown, RI 02842
Tel: (401) 846-7790 Fax: (401) 846-1520

Date    6 October 2008

## Freight Recap

**m.v. SANTOS SUCCESS - C/P**

Freight:
  64,900.0000 mt pig iron

Demurrage at PONTA DA MADEIRA                                      182,546.00

Despatch at SRIRACHA
Charterers payment 08/13/08

**Balance in Owners favour**                                       **104,003.50**

E.& O.E.

---

We ask you kindly to transfer above balance with value July 30, 2008 to:

BANK OF BERMUDA LTD
PAR LA VILLE PLACE
14 PAR LA VILLE ROAD
HM-08 Hamilton HM 08, Bermuda
Bermuda
SWIFT CODE: BBDABMHM
Credit Account: No. 010-097574-501
Beneficiary: Allseas Logistics Ltd
Reference: SANTOS SUCCESS - Com Bul - F000134 - Client 237

Yours faithfully
Phoenix Bulk Carriers ( US) Corp.

# EX. F

☒

AMERICA METALS TRADING LLP
c/o TORNAV SHIPPING
Suite 300,125 Lakeshore Rd. East
Oakville, L6J 1H3
Canada

**Phoenix Bulk Carriers ( US) LLC**

88 Valley Road
Middletown, RI 02842
Tel: (401) 846-7790 Fax: (401) 846-1520

Date      9 April 2009

## Freight Recap

**m.v. PLEIADES - C/P 18 August 2008**

Freight:
  67,337.0000 mt pig iron at USD

Demurrage at PONTA DA MADEIRA                                    26,940.80

Despatch at NEW ORLEANS                                          (13,724.00)
Charterers payment 11/14/08
Charterers payment 11/12/08

**Balance in Owners favour**                                     **13,216.80**

E.& O.E.

─────────────────────────────────────────────────────────────

We ask you kindly to transfer above balance with value November 5, 2008 to:

BANK OF BERMUDA
6 FRONT STREET
HM-08 Hamilton
Bermuda
SWIFT CODE: BBDABMHM
Credit Account: No. 010-813038-501
Beneficiary: Allseas Logistics Bermuda Ltd
Reference: PLEIADES - Com BUL - F000009 - Client 237

ʳs faithfully