```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
PHOENIX BULK CARRIERS, LTD.,

                    Plaintiff,
                                              MEMORANDUM AND ORDER
            - against -
                                              10 Civ. 2963 (NRB)
AMERICAN METALS TRADING, LLP,

                    Defendant.
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Phoenix Bulk Carriers, Ltd. ("Phoenix"), a Liberian entity, initiated this action on March 21, 2013 by filing a motion to confirm an arbitration award granted in its favor. On April 26, 2013, defendant American Metals Trading, LLP ("AMT"), a British entity, responded and filed a cross-motion to vacate the award. The motions were fully submitted as of May 3, 2013. The Court heard oral argument on the instant motions on October 16, 2013.

For the reasons stated herein, plaintiff's motion to confirm the award is granted and defendant's motion to vacate the award is denied.

**BACKGROUND**[1]

On March 26, 2007, Phoenix entered into a two-voyage charter party contract (the "contract") with AMT for the carriage of AMT's cargo of pig iron from a specific dock in Vitoria, Brazil (the "Paul" dock) to the Mississippi River.[2] (Award at 3.)  The key provisions of the contract, for purposes of the instant action, are found in Rider Clauses 16, 26, 31, and 45.

Rider Clause 16 ("Clause 16") entitled AMT to transport its cargo on two Phoenix vessels at a freight rate of $36.25 per metric ton of cargo.  (Id. at 3-4.)  Rider Clause 26 ("Clause 26") provided that the laydays/canceling dates[3] for the cargo were April 15-30, 2007 for the first voyage and May 1-20, 2007 for the second voyage.  (Id. at 4-5.)  Rider Clause 31 ("Clause 31") compelled arbitration in the event of a contract dispute.  It stated: "Should any dispute arise between [Phoenix] and [AMT], the matter in dispute shall be referred to three (3) persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their

---

[1] This background is derived from the Affidavit of Peter J. Gutowski ("Gutowski Aff.") (ECF No. 34); the March 26, 2007 charter party contract ("Contract"), included as Exhibit 2 to the Affidavit of Peter J. Gutowski; and the Arbitration Panel's Final Award ("Award"), included as Exhibit 4 to the Affidavit of Peter J. Gutowski.
[2] Because the parties agreed to a "berth charter party," Phoenix's performance was limited to the Paul dock.  (Award at 17-18.)
[3] Laydays/canceling dates refer to the time period during which the vessel is expected to load the cargo.

decision or that of any two of them, shall be final and, for the purpose of enforcing any award, this agreement may be made a rule of the court." (Contract at Clause 31.)

Lastly, Rider Clause 45 ("Clause 45") imposed three critical obligations on the parties. The first was that each "[p]erforming vessel and exact quantity [had] to be nominated/declared a minimum of 15 days prior to vessels [sic] ETA." (Award at 5.) Thus, given the laydays/canceling dates, Phoenix was required to nominate a performing vessel by March 31 for the first voyage and April 15 for the second voyage. Next, AMT had "to confirm acceptance of the vessel" by Vale do Rio Doce ("Vale"), the entity that operated the Paul dock, "within 24 hours of nomination." (Id. at 6.) Finally, Clause 45 stated that because "[AMT] and [Phoenix] are aware of potential problems with the operation of the facility at Paul[,] . . . before committing to performing vessels [Phoenix] shall check with [AMT] to ensure dock is operating on proposed vessels [sic] ETA." (Id.) This language was inserted due to growing concern over the future operation of the Paul dock. Indeed, Vale had recently obtained a court order excusing it from operating the dock after mid-April 2007, and as a result, serious loading delays and restrictions were occurring. (Id. at 7, 14-15).

Phoenix failed to nominate vessels for the voyages by the required dates (March 31 and April 15). (Id. at 7.) In fact, there was no communication between the parties until April 11, when they began exchanging emails and phone calls debating the feasibility of loading at the Paul dock. (Id. at 7-10). These communications continued for three weeks, during which time the parties were unable to confirm that AMT's cargo could be loaded at Paul.[4] (Id.) Although the parties briefly discussed loading at an alternate location, these negotiations ceased in early May when AMT decided to hold Phoenix in breach and load its cargo onto replacement vessels at other docks. (Id. at 10, 18.) Freight rates for these replacement vessels, the MV NESRIN AKSOY and the MV CAPE YORK, were $43.50 per metric ton and $47.00 per metric ton, respectively. (Id. at 10.) In its breach of contract action against Phoenix, AMT claimed $591,161 in damages, representing the difference between the freight rates it paid the replacement vessels and the rate it contracted to pay Phoenix. (Id. at 2).

In 2012, an arbitration panel comprised of three maritime experts with extensive arbitration experience held five hearings to determine whether AMT was owed damages under the contract. (Id. at 3.) The panel heard testimony from five

---

[4] After exhaustively studying the pig iron lineups for Paul, the arbitration panel found that AMT in fact would not have been able to load at that dock during the scheduled laydays. (Award at 14-18.)

4

witnesses and reviewed documentary evidence and relevant caselaw submitted by both parties.  (Id.)  On February 25, 2013, the panel unanimously denied AMT's claim.  (Id. at 11, 19).  In a thorough 20-page decision, the panel concluded that the language in Clause 45 regarding the operational problems at Paul constituted a condition of performance, meaning that Phoenix was obligated to furnish vessels for loading at Paul only if the parties had first established that the dock was available.  (Id. at 14, 18.)  Because the parties had not -- and, in fact, could not have -- done so, Phoenix was excused from performing.  (Id.)  However, the panel did find that Phoenix breached the contract by failing to nominate vessels at least 15 days prior to the laydays.  (Id. at 12.)  Moreover, the panel found that Phoenix's breach could not be excused under the doctrines of impossibility or frustration of purpose.  (Id. at 18.)  Nevertheless, the panel found that this breach was not the cause of AMT's damages.  (Id. at 18-19.)  Indeed, as the panel explained, even if Phoenix had nominated vessels in time, AMT would have been unable to confirm their acceptance by Vale, as required under the contract.  (Id.)  Thus, because of the circumstances at Paul, the need for replacement vessels was inevitable and could not be attributed to Phoenix's breach.

    In addition to denying AMT's claim for damages, the arbitration panel awarded Phoenix $158,226.20 in fees and costs

5

related to both the instant arbitration as well as a consolidated proceeding involving a separate contractual dispute that had previously been decided in Phoenix's favor. (Id. at 20).  To date, AMT has not made payment on this award, nor has it paid its allotted share of the arbitrators' fees. (Appendix A of Award; Gutowski Aff. at 3).

## DISCUSSION

### I. Legal Standard

"It is well established that courts must grant an arbitration panel's decision great deference." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003); see also Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.").  Indeed, "confirmation of an arbitration award 'is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)).

Where, as here, arbitration involves at least one foreign entity, the United Nations Convention on the Recognition and

Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201-08, applies.  See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 49 (2d Cir. 2004).  The Convention strictly limits the district court's role in reviewing an arbitral award.  Article V(1) of the Convention specifies five grounds for refusing to recognize or enforce an arbitral award:

> (a) The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law . . . ; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings . . . ; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Article V(2) states that enforcement may also be refused if "the subject matter of the difference is not capable of settlement by arbitration," or if "recognition or enforcement of the award would be contrary to the public policy" of the

7

country in which enforcement or recognition is sought. These seven grounds are the only grounds explicitly provided under the Convention.

Article V(1)(e) of the Convention allows a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.,[5] to a motion to set aside or vacate that arbitral award. Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 21 (2d Cir. 1997). Under the FAA, a court "must grant" a petition to confirm an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. Section 10(a) of the FAA specifies the four narrow grounds for vacating an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

---

[5] The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Any arbitration agreement affecting interstate commerce is subject to the FAA. Bybyk, 81 F.3d at 1198 (citing 9 U.S.C. §§ 1, 2).

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); see also AT&T Mobility LLC v. Concepcion, 563 U.S. ___, 131 S. Ct. 1740, 1752, 2011 WL 1561956, at *12 (Apr. 27, 2011) ("[R]eview under § 10 focuses on misconduct rather than mistake."); Duferco, 333 F.3d at 388 ("The Federal Arbitration Act . . . permits vacatur of an arbitration award in only four specifically enumerated situations, all of which involve corruption, fraud, or some other impropriety on the part of the arbitrators.").

Additionally, § 11 of the FAA enumerates the bases for modifying or correcting an arbitration award. That section provides that a court may modify or correct an award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted. [or]
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

In addition to the express grounds for vacating, modifying, or correcting an arbitration award, the Second Circuit has recognized an implied basis for such action where an award is in "manifest disregard" of the law. See T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010). Awards are vacated on the grounds of manifest disregard only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." Duferco, 333 F.3d at 389; see also T.Co, 592 F.3d at 339.[6]

AMT contends that there are two applicable -- and related -- grounds for vacating the panel's award: first, AMT argues that the panel acted in manifest disregard of the law when it failed to award AMT damages despite Phoenix's breach of the contract; and second, AMT contends, under § 10(a)(4) of the FAA and Article V(1)(c) and (d) of the Convention, that the panel

---

[6] Two recent decisions of the Supreme Court of the United States cast some doubt on the ongoing reach of the manifest disregard doctrine. See Hall St. Assocs. L.L.C. v. Mattel, Inc., 552 U.S. 576, 584-91 (2008) (holding that sections 10 and 11 of the FAA specify the exclusive grounds for vacating, modifying, or correcting an arbitration award under the Act); see also Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp., 559 U.S. 662, 672 n.3 (2010) ("We do not decide whether 'manifest disregard' survives our decision in [Hall Street Associates] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10."). Nevertheless, the Second Circuit has concluded that the doctrine has survived the Supreme Court's decision in Hall Street Associates, see T.Co, 592 F.3d at 339-40, and therefore we address AMT's argument that the arbitration award should be vacated on the grounds of manifest disregard.

exceeded its authority by construing Clause 45 of the contract as a condition of performance.[7]

We address these bases for vacating the award in turn.

## II. Vacatur on the Grounds of Manifest Disregard

First, AMT contends that by not awarding damages despite acknowledging Phoenix's breach and the inapplicability of the impossibility and frustration of purpose defenses, the panel acted in manifest disregard of the law.

### A. Standard

As noted above, AMT bears a "heavy burden" in its endeavor to vacate the Panel's award on this ground. See T.Co, 592 F.3d at 339. First, it is well settled that the manifest disregard "standard essentially bars review of whether an arbitrator misconstrued a contract." Id. "Interpretation of . . . contract[ual] terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation." Yusuf, 126 F.3d at 25. Indeed, the Second Circuit has stated that an arbitrator's interpretation of a contract is "not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly

---

[7] AMT also suggests that the panel's award is subject to vacatur because it was irrational. (Memorandum of Law in Opposition to Plaintiff's Motion to Confirm Arbitration Award and in Support of Defendant's Cross-Motion to Vacate Arbitration Award ("Resp. Mem.") at 8, 14.) However, the Second Circuit does not recognize irrationality as a basis for vacating an arbitration award, and thus we do not address it. See Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007).

disregarded the law." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 214 (2d Cir. 2002).  See also Yusuf, 126 F.3d at 23 ("[T]his court has generally refused to second guess an arbitrator's resolution of a contract dispute.") (quoting John T. Brady & Co. v. Form-Eze Sys., Inc., 623 F.2d 261, 264 (2d Cir. 1980)); I/S Stavborg v. National Metal Converters, Inc., 500 F.2d 424, 432 (2d Cir. 1974) (refusing to reverse arbitration award based on a clearly erroneous contract interpretation).

Even where an arbitrator's decision goes beyond contract interpretation, a "federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law.  On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."  Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004) (internal citations and quotations omitted).

This Circuit has identified a three-step inquiry into whether an arbitration award should be vacated on the grounds of manifest disregard:

> First, we must consider whether the law
> that was allegedly ignored was clear, and
> in fact explicitly applicable to the matter
> before the arbitrators.  An arbitrator
> obviously cannot be said to disregard a law
> that is unclear or not clearly applicable.

> Thus, misapplication of an ambiguous law does not constitute manifest disregard.
>
> Second, [] we must find that the law was in fact improperly applied, leading to an erroneous outcome. [] Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.
>
> Third, [] we look to a subjective element, that is, the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him.

T.Co, 592 F.3d at 339 (internal quotations omitted).

**B. Discussion**

As discussed above, the arbitration panel concluded that Phoenix could not be held responsible for AMT's damages because (1) even if Phoenix had properly nominated vessels, AMT would have been unable to obtain Vale's acceptance of them, and (2) in any case, Phoenix had no duty to load AMT's cargo given that the condition precedent -- the parties' confirmation that the Paul dock was available -- was never satisfied. This conclusion was the product of contract interpretation and factfinding, neither of which may be second-guessed. See Westerbeke, 304 F.3d at 213-14.

However, even if this Court could scrutinize the panel's decision, we would certainly find more than the required

13

"barely colorable justification" for it.  Wallace, 378 F.3d at 190.  Indeed, the panel's reasoning is supported by two related longstanding principles of contract law.  First, in order to prevail in a breach of contract action, the complaining party must prove that it would have been able to meet its obligations under the contract.  Record Club of Am., Inc. v. United Artists Records, Inc., 890 F.2d 1264, 1275 (2d Cir. 1989).  See also Scholle v. Cuban-Venezuelan Oil Voting Trust, 285 F.2d 318, 320 (2d Cir. 1960) (holding that the complaining party must demonstrate that the breach of contract caused it injury by proving that it "intended to and was able to perform when [its] performance was due"); Restatement (Second) of Contracts § 244 ("A party's duty to pay damages for total breach by non-performance is discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return promise.").  Here, although Phoenix breached the contract by failing to nominate vessels, AMT would have been unable to perform its reciprocal obligation to obtain Vale's acceptance of the vessels.

Second, "[i]n a breach of contract action, the plaintiff must demonstrate more than simply that defendant breached its contract and that the plaintiff suffered damage.  Plaintiff cannot recover if it would have suffered the harm regardless of defendant's actions."  Point Prods. A.G. v. Sony Music Entm't,

14

Inc., 215 F. Supp. 2d 336, 341 (S.D.N.Y. 2002). See also LNC Invs. v. First Fid. Bank, N.A., 173 F.3d 454, 465 (2d Cir. 1999) (holding that "where [] the remedy sought is damages to compensate for a claimant's loss, the usual damages-causation rule for tort and contract breach cases is appropriate"). Such was the case here. Because the need for replacement vessels was inevitable given the unavailability of the Paul dock, AMT would have suffered damages regardless of Phoenix's breach.[8]

In conclusion, the panel properly applied the law to the facts of the case.[9] See T.Co, 592 F.3d at 339. Accordingly, the arbitration award cannot be vacated on the grounds of manifest disregard.

AMT's argument to the contrary is without merit. It contends that the panel disregarded the law by employing inherently contradictory reasoning. Specifically, it claims that the panel's determination that the doctrines of

---

[8] At oral argument, AMT emphasized that although Phoenix would have been unable to load at the Paul dock during the scheduled laydays, the dock was still operational at the time Phoenix was supposed to have nominated vessels. However, this fact does not help AMT's cause. To the extent it shows that Phoenix had no excuse for its failure to nominate, it is inconsequential because the panel already so concluded. And to the extent it indicates that AMT could have obtained Vale's acceptance of the vessels if Phoenix had timely nominated, it is nullified by the panel's factual finding to the contrary.

[9] Although the panel did not discuss these legal principles, we can nonetheless rely on them to confirm the arbitration award. See Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 13 (2d Cir. 1997) (holding that courts "must confirm the arbitrators' decision 'if a ground for the arbitrators' decision can be inferred from the facts of the case.'") (quoting Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1216 (2d Cir. 1972).

impossibility and frustration of purpose were inapplicable cannot be reconciled with its reading of Clause 45 as a condition of performance. ("Resp. Mem." at 13-14.) However, we see no contradiction in these positions. Whereas the impossibility and frustration doctrines, if applicable, would have excused Phoenix's breach, the condition of performance negated Phoenix's duty to supply vessels, and, along with AMT's inability to confirm Vale's acceptance of any proposed vessels, severed the causal connection between Phoenix's breach and AMT's damages.

### III. Vacatur Pursuant to § 10(a)(4) of the FAA and Article V(1) of the Convention

Next, AMT argues that this Court should vacate the award under § 10(a)(4) of the FAA and Article V(1)(c) and (d) of the Convention because the panel exceeded its authority by construing Clause 45 as a condition of performance.

#### A. Standard

Section 10(a)(4) of the FAA allows for vacatur of an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). The Second Circuit has "'consistently accorded the narrowest of readings' to this provision of law." Reliastar Life Ins. Co. v. EMC Nat'l Life Co., 564 F.3d 81, 85 (2d Cir. 2009) (quoting Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d

Cir. 2003)).  This strict limit on a reviewing court's power to vacate is intended to "facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation."  T.Co, 592 F.3d at 342 (quoting Reliastar, 564 F.3d at 85).

A court's "inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."  DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997).  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).  Thus, while an "arbitrator may not ignore the plain language of the contract . . . , a court should not reject an award on the ground that the arbitrator misread the contract."  Id.

Article V(1)(c) of the Convention similarly provides that a court may refuse to enforce an arbitration award if it "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains

17

decisions on matters beyond the scope of the submission to arbitration." This defense "tracks in more detailed form" § 10(a)(4), and should likewise "be construed narrowly." Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier, 508 F.2d 969, 976 (2d Cir. 1974).[10]

### B. Discussion

AMT argues that the panel exceeded its authority by reading a condition of performance into Clause 45 which impermissibly re-wrote the contract. We disagree. The contract has a broad arbitration clause calling for the arbitration of "any dispute" between AMT and Phoenix. See, e.g., Vera v. Saks & Co., 335 F.3d 109, 117 (2d Cir. 2003) (per curiam) (holding that a provision requiring arbitration of "any dispute, claim, grievance or difference arising out of or relating to this Agreement" was a broad provision). There is no question that this provision encompassed AMT's breach of contract claim and empowered the panel to interpret Clause 45 in determining liability. Whether the panel was correct to conclude that Clause 45 constituted a condition of performance is of no moment in this context, although there is certainly

---

[10] AMT argues that vacatur is also warranted under Article V(1)(d) of the Convention, which provides that a court may refuse to enforce an arbitral award where "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties." However, because AMT is contesting the scope of the panel's authority, and not the propriety of the arbitration procedure, Article V(1)(d) is irrelevant here.

support for that conclusion.  Under § 10(a)(4), we do not need to consider whether the panel correctly decided the underlying issue.  It is sufficient to find that the panel was "arguably construing or applying the contract" in order to resolve a dispute that fell within the arbitration clause.  <u>United Paperworkers</u>, 484 U.S. at 38.

Thus, we decline to vacate the Panel's award on the grounds that the panel exceeded its authority.  Furthermore, because AMT has failed to establish grounds for vacating, modifying, or correcting the arbitration award, we grant Phoenix's motion to confirm the arbitration award.  <u>See</u> 9 U.S.C. § 9.

## CONCLUSION

For the foregoing reasons, we grant Phoenix's motion and deny AMT's cross-motion.  The parties are directed to submit a form of judgment, hopefully on consent.  If the parties cannot agree on the form of the judgment, Phoenix should submit a proposed judgment on three days' notice.

Dated:     New York, New York
           October 31, 2013

                                    /s/ Naomi Reice Buchwald
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for Plaintiff**

Peter J. Gutowski, Esq.
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005

**Attorney for Defendant**

Patrick F. Lennon, Esq.
Lennon, Murphy, Caulfield & Phillips, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY 10170